Good morning, your honors. May it please the court, my name is Isaac Rillo. I'm a certified law student representative appearing on behalf of the appellant, Mr. Calvin X. Singleton. My supervisor, Professor Gregory Sisk, is here in the courtroom with me, and I'd like to reserve four minutes for rebuttal by my co-counsel, Gabby Tremblay. That's fine. Welcome to the Ninth Circuit. Please just keep an eye, both of you, keep an eye on the clock. You're responsible for watching your own time. Okay, go right ahead. Thank you, your honor. You bet. For years, Mr. Singleton has suffered from photophobia, or extreme light sensitivity. The simplest, cheapest, but still life-altering treatment for this is a pair of transitional lenses, and that's exactly what every ophthalmologist for the past 16 years has recommended for Mr. Singleton. But the prison has obstinately refused to follow those recommendations. Although it would cost the prison nothing, poses no security risk, and is about as simple as simple a device. And that is why we're here today. I'd like to address... Could I just write there, when you say the prison has refused to grant him the request, has it also refused to allow him to get his own transitional lenses? That's what I understand, your honor. He has been permitted to have clip-on sunglasses, which is a partial relief, but he is seeking injunctive relief for his transitional lenses. So the clip-on sunglasses don't change in density, is that right? They just stay the same? That's exactly right. Transitional lenses will change in accord with whatever the lighting is in the room. And he's seeking those because he experiences photophobia indoors as well. I'd like to address the following three issues. First, that the prison official's sole reliance on categorical policy in denying Mr. Singleton care is the paradigm of deliberate indifference. Second, that the district court incorrectly concluded that this is a case about a legitimate difference in medical opinion. And third and finally, that because Mr. Singleton is entitled to these lenses from a prior settlement agreement, the defendants cannot contend that the device is not medically necessary. I'll turn to the first issue. In Caldwell v. Bannister, this court held that the sole reliance on a categorical policy to deny medical care is the paradigm of deliberate indifference. In that case, multiple treating specialists recommended a cataract removal surgery for a prisoner, but the prisoner was denied not because of an individualized assessment, but because a categorical policy only allowed for, or excuse me, permitted surgery if, would only allow surgery if the prisoner had one functioning eye. But because the prisoner had one functioning eye, he was categorically excluded from receiving that treatment. Counsel, isn't there a meaningful difference between this case and the one that you're discussing? Because here he did have an individualized assessment. He was transferred to a new facility. He saw a doctor who assessed him and then made the decision. And the case that you're talking about, you're correct, there was no assessment. It was a decision made by an administrative body. No, Your Honor. Our contention is that Mr. Singleton did not receive an individualized assessment. Didn't he have an appointment when he got to the new facility with an optometrist? He did see an optometrist, but according to Mr. Singleton's sworn testimony, his sworn deposition, the optometrist fitted him for just regular prescription lenses. And when he asked about transitional lenses, he was denied wholesale because of the black letter policy. And he was, he was fitted for the lenses and he was basically told to move on. But that fitting, isn't that an individualized treatment assessment? It would not be an individualized assessment of his photophobia. Well, can you, this is an important point for me. So I want to make sure that I understand your response. Is it your response that he saw, excuse me, one-on-one saw this individual at the new facility and the facility, and the explanation was you can't have it because of a policy? That is correct, Your Honor. Yes. Right. I mean, there seems to be a difference of opinion. Your client says he was told there was a policy. They say it's just a difference of medical opinion. How does that result in the district court? Oh, the district court. It appeared that the district court bought the state's explanation that it was a difference of medical opinion. That is correct, Your Honor. But we contend that a legitimate difference of medical opinion does not exist here because this court has repeatedly held in cases like Hamilton v. Endell and Snow v. McDaniel that a deliberate difference inquiry or an inquiry about medical necessity turns on treating specialists for that particular condition. Yes, I understand that. My question is, I mean, where's the policy? I don't, I mean, that seemed to be bothering the district court is that there wasn't, except for your client's testimony, there wasn't evidence of a policy, which is important. Yes, Your Honor. The policy is not in the record. We share that sentiment. But Mr. Singleton, again, has testified in his deposition and in his sworn declarations that this is what he was told by a primary care provider and an optometrist that he is categorically excluded. So does this boil down to a credibility determination about whether he really said that, whether he was really told that? There's a couple layers of problem there. Yes, this should be assessed by a jury. The defendants have not submitted any sort of declarations from either the primary care provider or the optometrist to refute Mr. Singleton's testimony. And even on summary judgment, for the standard of summary judgment, they should have objected to his testimony about the categorical policy. And there is no evidence of their objection in the record. Judge, if you could circle back to Judge Thomas's question, how do you interpret the district court's ruling? What did the district court do about this? There were two versions of events that were teed up. How did the court resolve it? Well, the court, the district court concluded that because medical providers were disagreeing, it was a mere disagreement. And that's not enough to rise to the level of deliberate indifference. And what's your contention about why that was erroneous? Our contention is that there's not a legitimate difference because this court has emphasized in Snow and in Hamilton that when you have treating specialists on one side and non-treating non-specialists on the other side, that doesn't create a legitimate difference in medical opinion because a jury could, a reasonable jury could conclude that those opinions that are non-treating non-specialists are inferior. And I see that I'm running out of time. Well, we took a little of your time. Let me just, do you have any other questions at this point? I'm good. No. Okay. Thank you. Thank you, Your Honors. You're welcome. Good morning. Good morning, Your Honors. May it please the court, Lauren Cantor for the appellee doctors. I'd like to address a couple of key points with the court today in response to my friends. The first is that plaintiff's own testimony regarding his treatment appropriate for what has been diagnosed as low to mild glaucoma and his self-reported symptoms don't create a tribal issue effect. And the second... Can I stop you since you did start there? I just want to make sure that my notes are right. I have something here that indicates that there's not, it's not contested. The severity of the medical condition is not contested. It is not, Your Honor. And I would even concede, Your Honor, that he has photophobia. Okay. Go right ahead. And also, he's on three drops, which is pretty significant in terms of treatment of glaucoma. And glaucoma itself can, one of the symptoms can be photophobia. Yes. So, I mean, here it comes in. How much does it cost to get him the lenses? A hundred bucks? I couldn't tell you about cost, Your Honor, but what I do know is that he's being treated appropriately for low to mild glaucoma risk. And the record demonstrates that. So he was seen, as soon as he transferred, first, before he was transferred, he was seen at his prior facility by an ophthalmologist. And the ophthalmologist noted his concerns and he had a problem list, an active problem list where it notes all the different medical conditions that he had. There's no notations of headaches or even photophobia there. But again, granted, I could concede that he has photophobia. I'm not going to dispute that. So my understanding of the record is before he gets transferred, he had, for a long period of time, transitional lenses. Is that correct? Well, Your Honor, I would say this. We have sort of two records here. I would like to say that. That you have, because there's a big gap in between. You have a, and I think they're two different medical conditions. Counselor, our record, your time is just ticking, but our record, please correct us if we're wrong, is that he had these, he contends he's had them for about 20 years and they were broken at a prison job and then he couldn't get them replaced. That's what he's contending, yes, Your Honor. Okay. That's what he's contending. So if we accept that, then isn't the reasonable inference that he was given those lenses at the prior facility for whatever period of time that was based on an assessment that they were appropriate for his medical condition? That's possible, Your Honor. But now he's at a new facility and... But California prison policy is that you don't give medical devices or interventions unless they're actually medically necessary. And so if that was being given, isn't the fair inference is that it was medically necessary? I think you can have a difference of medical opinions when you go to a new facility. He's still being treated by an optometrist who can treat and diagnose glaucoma. He's been given three different eyedrops. He's given the proper prescription lenses for his condition and he gets evaluated and transition lenses aren't deemed necessary. And so right there in the sequence of events, his contention is what he was told twice is that there's a policy. I don't know if it's a written policy. I agree with Judge Thomas, I can't find it. I don't think it's in the record. But he says that he was told there's a policy, so you can't have these. Right. He says... How does that get resolved at summary judgment? Well, he has, and the district court did address this, that there's no policy in the record. What there is in the record, though, are his medical appeals. Well, it wouldn't have to be... I mean, it wouldn't have to be a written policy if they're just going by some kind of oral policy or some... I don't know what the policy is either, but that's what he says he was told. And I'm not so sure why that isn't enough here, because I don't think you're taking the position that it would be fair game for the defendants to rely upon a policy, written or unwritten, without a separate assessment, right? I don't think you're staking out that position. Right. I'm not. I'm not. But what I am saying is it's not just... What I did want to get to actually, Your Honor, was that second point, which is that it wasn't just based on policy. So if you look at... Well, how do we know that from the record? I mean, and I don't want to interrupt your argument, but here we have a declaration where he says he was told it was based on policy. You say no, but there's nothing in the record as to what was actually told to him. There's no affidavit. The optometrist could have been incorrect, and we don't see a policy written or otherwise in the record. It's pretty tough on appeal to resolve that factual issue, which is important. How do we proceed? Because we can't just say he's right, you're wrong, or you're right, he's wrong. That's the stuff that gets you by a summary judgment. Right. Well, in the record, there are his medical appeals, and in his medical appeals, it does state that there were reasons why he was denied those transition lenses. He was... It was not just based on the policy. It was based on the interview. He was interviewed by nurses. He's in the chronic care program because he does have other chronic medical conditions. So he's being continuously monitored for numerous medical conditions, and he... There... And policy. So there's three things. So it's not just policy. And Colwell, which is the case that's relied on by my friends, is about denial based solely on policy, which is what would be... But this is only partially based on policy? It is partially based on policy because there's... What's the policy? What's the policy? The policy that's in the record, I don't know what this policy is because he's referring to a policy that's not in the record. The policy that's... Well, the policy that my friends are referring to is not in the record. The policy that's in the record is about durable medical equipment, and it was actually presented by Mr. Singleton in his brief. And it says that when you come to a new facility, you get re-evaluated for your durable medical equipment, and it's determined whether it's medically necessary. It is not like Colwell where you're just denied a cataract surgery if you... Unless you're blind. This is... This applies to all durable medical equipment. It doesn't... It's not an outright denial. It requires an evaluation. Okay. So could I ask you again... I'm trying not to interrupt, but your time is limited. Of course. If you could circle back to Judge Forrest's question, because I think I have the same question, really. There's a... Our record is that he had these transitional lenses for something like 20 years. You're not contesting the severity of the condition or why he needs these lenses. And then they broke, apparently. And what we have here is a representation that he wasn't... He was denied the opportunity to even buy them himself. He offered to pay for them. Is that the correct... Does he understand that policy correctly? That he wouldn't be able to buy these? I think at one point it's in the record that he wasn't able to buy the clip-on shades, but... No, no, no, no. That's not what he... He attests that he... He said, I'll pay for them. I want these transitional lenses. I've used them for 20 years. I'm paraphrasing to be sure. Sure. But he felt that they were very important and he offered to pay for them and he was still told no. Is that consistent with state policy? I couldn't tell you, Your Honor, because I don't have that policy in the record, to be honest. And I also don't... I also do want to say, though, as much as I do agree and I will concede the photophobia, I will concede that at one point he had transition lenses. There is a gap in record between 2010 and 2017 in terms of his treatment and what he had. It is very much based on what he says and what he believes is medically necessary. No, we don't make credibility determinations at summary judgment. That's part of our problem. It is based upon his assessment, his statement that, you know, I've used these for 20 years. I understand, Your Honor, but I also do... I also... The standard for deliberate indifference is also not based on what plaintiff... A plaintiff says they want. It's... Right, right, right. But we're talking about avoidable pain. Again, I'm paraphrasing that standard, but he says this worked. This worked for me for 20 years. You know, his description of what he experienced is if he doesn't have them and it seems to be really avoidable, particularly if he's offering to pay for them himself. So I'm... I just want to put that out there and give you an opportunity to respond, but perhaps you have responded the best you're able to at this point. Well, I'd like to just close with this, Your Honor. He... We had an expert ophthalmologist say that he was being treated appropriately for his condition. He's receiving eye drops. He's got appropriate prescription glasses. Did that individual examine him? No, he did not, but he was examined by an optometrist who can treat and diagnose. Right, but let me make sure I understand what's undisputed. One, he's got glaucoma. Two, he also had a stroke and he's missing vision. In the field of vision, half of his left eye, correct? Three, you don't have any security concerns about the use of these lenses, right? I couldn't tell you, Your Honor, about that. And that's not in the record, but I gather it's... I haven't seen it raised. And four, you know, glaucoma is incurable. I mean, so he gets the diagnosis that he's got photophobia, which you don't dispute, and it doesn't get better, glaucoma. So here we are. That's undisputed. I just want to make sure I've got the record straight. Other than the security risk, yes, Your Honor, I would say that you are correct. Well, are we correct that the state didn't or the defendants didn't raise a security risk? If there is one, we don't know about it in the record, do we? We did not, Your Honor. Okay, fair enough. I think I cut you off. I want to make sure, Judge Forrest, did you get your... Well, I guess I have one last question. My understanding of the legal standard for deliberate indifference is that the plaintiff needs to prove that the course of treatment that they received was medically unacceptable, given the circumstances. And here, this case perhaps presents the question of medically preferable versus medically unacceptable. And I'm just curious if you could comment on that. Is there anything in the record to indicate that how the prison proceeded was against medical advice? May I go past my time? Please. Okay. Yes, Your Honor. I guess what I would say to that is there is, and the district court agreed that this is a difference between treating professionals. You know, the prison saw him and treated him appropriately with professionals. It's not just, we're not just talking about a primary care doctor. We are also talking about an optometrist. And actually, that is in line a bit with Colwell, where in Colwell, you know, he was actually seen also by an optometrist and by an ophthalmologist and by a primary who all diagnosed him with this and here it's, you also have an optometrist and the district court also agreed and cited to a decision in Young, which reason that the fact that a plaintiff was seen by an optometrist and not by an ophthalmologist was not deliberate indifference. So, you know, we would stand on the grounds that there's, there was no deliberate difference here. It's just a difference of medical opinion and also a difference of opinion between what Mr. Singleton felt was appropriate for his treatment. Thank you for your responses and your patience. We've taken you over your time. Thank you. Appreciate your argument. We'll hear from opposing counsel, please. Counsel, you have four minutes. May it please the court. My name is Gabby Tremblay and I'm a certified law student representative here on behalf of Mr. Kelvin X Singleton. I have two main points to make in response to our friend for the appellee. I'll first start with the fact that a reasonable jury could find that the prison providers relied solely on a policy. There is one notation in the record from the optometrist nurse, which said that the optometrist found that transitional lenses are not medically indicated at this time, but it's best read in the context of Mr. Singleton's experience with this optometrist. Mr. Singleton said that the optometrist merely relied on a categorical policy and then went along with fitting him for corrective lenses. And so read in this context, this note is simply just shorthand for finding that he did not fit the single eye disorder that the policy allows him to have transitional lenses for. May I ask you a question? Is his treatment, his diagnosis of glaucoma in both eyes or just one? It's in both eyes, Your Honor. So he's taken drops on both eyes every day, right? Yes. I'll also note that this note and nothing, there's nothing in the record from the optometrist denying what actually happened in this meeting and that he relied on a policy in denying him the transitional lenses. I'd also like to cite to this court's precedent in Manly v. Rowley, in which even self-serving statements are enough to overcome summary judgment, as long as they are about facts and not mere conclusory statements. I want to ask you the question that I asked at the end of your friend. It's your burden to prove that the course of treatment your client received was medically unacceptable. What do you point to to show us that it was medically unacceptable as opposed to just not his preference? Yes, two responses to that, Your Honor. First, that what's medically acceptable under this court's precedent in Snow, Caldwell, and Hamilton is what treating specialists provide. And transitional lenses is exactly what the treating ophthalmologist in this case provided. Go right ahead. So if I look at that record of the history of him being given the transitional lenses, I don't actually see any findings that it was medically required or it was medically indicated. He was given them. And so I think, as I talked about before, I think there's an inference to be made there because the prison doesn't just give out medical things without them being necessary. But there isn't actually a finding in any of the medical records in this file for why or what condition he has that requires that medically. And so I'm not quite sure how far that gets you. Yes, two responses to that, Your Honor. First, the Mr. Singleton was referred to specialist ophthalmologist for the very purpose of treating his eyes. So the fact that they recommend recommended transitional lenses indicates that they are medically necessary, even if their prescriptions don't necessarily have the magic words medical necessity. Second, Mr. Singleton did testify that as medically necessary, and he submitted the expert report from the prior litigation, which said that transitional lenses have been prescribed to him as medically necessary. When was the most recent prescription? Mr. Singleton testified that he met with Dr. Wright Scott in 2020. And Dr. Wright Scott again said that transitional lenses was her prescription. Prescribed transitional lenses in 2020? Yes. I understand it. Okay. Are there any other questions? No, it doesn't look like there are. Thank you for your argument. And thank you for your participation in the pro bono program. We appreciate it very much. We'll take that case under advisement and move on to the next case on the calendar.
judges: THOMAS, CHRISTEN, FORREST